COWEN, Circuit Judge,
dissenting.
I.
The issue presented to the previous panel was whether the plaintiff had alleged a violation of a clearly established constitutional right that was sufficiently clear to a reasonable government official, specifically a township supervisor. In deciding that issue, this Court expressly affirmed the District Court’s use of the “improper motive” standard when it held that “we believe the [District [C]ourt properly analyzed the supervisors’ request for qualified immunity on summary judgment” and found the only error in that analysis to be the District Court’s failure to examine each supervisor’s request on an individual basis. At the very least, it was inherent in this Court’s holding that it was proper for the District Court to apply the “improper motive” standard to its substantive due process analysis in a municipal land use case. Because the previous panel already *403 decided this issue, we are bound by this Court’s prior affirmance of the District Court’s application of the “improper motive” standard under law of the case doctrine, not to mention Internal Operating Procedure of the United States Court of Appeals for the Third Circuit 9.1. There-, fore, I respectfully dissent with the majority’s holding that law of the case doctrine does not control this appeal.
Under the law of the case doctrine, a panel of an appellate court generally will not reconsider a question that another panel has decided on a prior appeal in the same case. The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); Arizona v. California, 460 U.S. 605, 618-19, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The law of the case doctrine acts to preclude review of only those legal issues that the court in a prior appeal decided, either expressly or by implication; it does not apply to dicta. Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 988 F.2d 414, 429 (3d Cir.1993).
The law of the case doctrine does not restrict a court’s power, but rather governs its exercise of discretion. Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir.1997). Accordingly, we have recognized that the doctrine does not preclude our reconsideration of previously decided issues in extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. Id. at 116-17.
The previous panel expressly approved the District Court’s use of the “improper motive” standard in its holding:
Under existing case law, we believe the District Court properly analyzed the supervisors’ request for qualified immunity on summary judgment, having found that United Artists at this stage sufficiently alleged a violation of a clearly established constitutional right. Nonetheless, we believe the District Court should have considered each supervisor’s request for qualified immunity individually rather than as a group. On remand, we direct the District Court to address each supervisor’s request for immunity on an individual basis or explain why the supervisors should be considered collectively.
November 29, 2000 Order, at 4-5 (emphasis added) (citations omitted).
The law of the case doctrine unquestionably governs this appeal. The previous panel’s statement that “United Artists at this stage sufficiently alleged a violation of a clearly established constitutional right” constitutes a holding. In the prior appeal, this Court expressly affirmed the District Court’s qualified immunity analysis of the supervisors as a whole, and found the only error to be the District Court’s failure to apply that same analysis to the supervisors individually. The panel did not direct the District Court to alter or reconsider its qualified immunity analysis, but only to address each of the supervisors individually under that same analysis.[1]
Moreover, there are no exceptional circumstances here that make it appropriate to reconsider the prior panel’s decision. See Public Interest Research Group of New Jersey, Inc., 123 F.3d at 116. Under *404 both the law of the case doctrine and our own internal operating procedures, the majority is wrong to revisit an issue that has already been decided. See 3d Cir. I.O.P.9.1.[2]
The majority takes issue with the previous panel’s statement made in a footnote:
At oral argument this Court, sua sponte, raised two issues: ... (2) whether the “shocks the conscience” standard announced by the Supreme Court in County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), is applicable to substantive due process claims like the one at issue here. At this time, we express no opinion whether these matters are appropriate in determining the merits of the substantive due process claim.
November 29, 2000 Order, at 4 n. 2. The majority argues that this footnote raises “substantial doubt as to whether a prior panel actually decided ... the applicable standard governing United Artists’ substantive due process claim.” Majority at 8. Given the holding of the prior panel contained in the body of the opinion, this footnote is mere dicta. The holding of the case and instructions to the District Court were to apply the same “improper motive” standard to the supervisors individually. Even if one were not to accept the express holding of the prior panel in light of this footnote, it is quite clear that the “improper motive” issue was decided by “necessary implication” and therefore also subject to the law of the case doctrine.
In AL Tech Specialty Steel Corp. v. Allegheny Int’l Credit Corp., we held that the' law of the case doctrine applies to decisions rendered even by a judgment order because the doctrine also applies to issues that are decided by necessary implication. 104 F.3d 601, 605 (3d Cir.1997). In that case, Allegheny International argued that 11 U.S.C. § 502(e)(1)(B)[3] of the Bankruptcy Code barred AL Tech’s claim. The Bankruptcy Court agreed. On appeal to the District Court, the District Court held that § 502(e)(1)(B) barred only contingent claims under these conditions. It allowed AL Tech’s claim to the extent that it was a direct claim against Allegheny International under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq. Al Tech Specialty Steel Corp., 104 F.3d at 605. This Court affirmed the District Court by judgment order. When appealed a second time to this Court, Allegheny International urged the second panel to examine the question whether AL Tech’s claim was barred under § 502(e)(1)(B). In an opinion written by Judge Alito, we held that “In this case, the panel that heard the prior appeal necessarily decided that AL Tech’s claim was not barred by § 502(e)(1)(B). The law of the case doctrine applies to this decision even though it was rendered by judgment order because that doctrine ‘applies both to issues expressly decided by a court in prior rulings and to issues decided by necessary impli *405 cation.’ ” Id. (citing Bolden v. SEPTA, 21 F.3d 29, 31 (3d Cir.1994) (emphasis added)).
This appeal presently before us presents an even stronger reason for the application of the doctrine of law of the case and I.O.P. 9.1, given the prior panel issued a written opinion holding that the “improper motive” was the correct rule of law to apply. The prior panel was required to determine whether the actions of the supervisors, as alleged by plaintiff, violated a clearly established constitutional right that was sufficiently clear to a reasonable government official. Inherent in this inquiry is the determination of whether the supervisors’ actions rose to a level of a substantive due process violation; if the alleged actions were insufficient to amount to a violation, the supervisors’ actions could not violate a clearly established constitutional right. Resolution of the question of the correct standard to apply in the context of a municipal land use case based upon the summary judgment record was integral to the Court’s analysis in affirming the District Court’s denial of summary judgment on the question of qualified immunity. Despite footnote 2 of the prior panel’s opinion, we are bound under law of the case doctrine and I.O.P. 9.1 by this Court’s prior approval of the District Court’s application of the “improper motive” standard.
II.
In addition to my belief that law of the case doctrine controls in this matter, I further disagree with the proposition that only “shocks the conscience” language may be used to analyze municipal land-use context substantive Due Process cases.
First, the Majority’s reliance on Lewis is misguided. Lewis was a high speed police chase case where the resulting injury was death. That scenario is extremely far afield from the factual setting we have here. The Lewis Court was not presented with a choice between “improper motive” or “shocks the conscience” in the unique arena of Fourteenth Amendment-protected property rights as they relate to local land use decisions. Rather, the Supreme Court reviewed the case for a carefully delineated reason and described the issue for review narrowly. More specifically, the Court “granted certiorari ... to resolve a conflict among the Circuits over the standard of culpability on the part of a law enforcement officer for violating substantive due process in a pursuit case.” Lewis, 523 U.S. at 839, 118 S.Ct. 1708; see also id. at 836, 118 S.Ct. 1708 (“The issue in this case is whether a police officer violates the Fourteenth Amendment’s guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender.”). Although finding that the “shocks the conscience” standard is “not inappropriate to an excessive force claim in the context of a prison disturbance,” we acknowledged in Fuentes v. Wagner, 206 F.3d 335 (3d Cir.2000), cert. denied, 531 U.S. 821, 121 S.Ct. 63, 148 L.Ed.2d 29 (2000), that “our recent decisions suggest that the [‘shocks the conscience’] standard may only apply to police pursuit cases,” id. at 348 (citations omitted).
Second, the Majority opinion gives far too little weight to the fact that this Circuit has a well-established jurisprudence employing the improper motive test in the substantive Due Process land-use context. The cases are legion. See Bello v. Walker, 840 F.2d 1124 (3d Cir.1988) (seminal case); DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592 (3d Cir.1995); Blanche Road Corp. v. Bensalem Township, 57 F.3d 253 (3d Cir.1995); Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir.1998); Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118 (3d Cir.2000); Herr v. Pequea Township, 274 F.3d 109 (3d *406 Cir.2001); see also Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685 (3d Cir.1993). Moreover, and perhaps most importantly, this Court has continued to apply and cite to the “improper motive” test even after the decision in Lewis was handed down. See Doby v. DeCrescenzo, 171 F.3d 858 (3d Cir.1999); Woodwind, 205 F.3d 118; Nicholas v. Pennsylvania State University, 227 F.3d 133 (3d Cir.2000); Khodara Envtl., Inc. v. Beckman, 237 F.3d 186 (3d Cir.2001); Omnipoint Communications Enters., L.P. v. Zoning Hearing Bd., 248 F.3d 101 (3d Cir.2001); Herr, 274 F.3d 109.
Unlike the Majority, I am fully comfortable assuming that this Court in Woodwind and Nicholas (as in any other case it decides) was completely aware of the content of all published Supreme Court case law that may bear on the case at hand, especially in such a fundamental area as Due Process. Had the Woodwind or Nicholas Courts felt that Lewis precluded the use of the improper motive standard of constitutionally tortious conduct, they surely would have expressed that point. They did not do so. The Majority relies on the fact that the Woodwind Court never mentioned Lewis. True enough. But the Majority overlooks the fact that other Third Circuit cases do mention Lewis. In fact, when Judge Alito’s opinion in Nicholas is read, it answers the question addressed by him today, with the opposite result. The Nicholas Court, citing approvingly to Bello and Woodwind, affirmatively states that “improper motive” is an appropriate substantive Due Process test. It references Lewis in saying that “shocks the conscience” is also an appropriate test. As United Artists points out, the standard is clearly stated in the disjunctive:
[W]e have held that a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are “arbitrary, irrational, or tainted by improper motive,” Woodwind Estates, Ltd. v. Gretkowski 205 F.3d 118, 123 (3d Cir.2000) (quoting Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.1988)), or by means of government conduct so egregious that it “shocks the conscience,” Boyanowski [v. Capital Area Intermediate Unit, 215 F.3d 396 (3d Cir.2000)] (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).
Nicholas, 227 F.3d at 139 (emphasis added).
Judge Alito’s explanation of post-Lewis Third Circuit jurisprudence in Nicholas was not an isolated summary of the extant law. One year later, in Khodara, he cited authoritatively to his opinion in Nicholas for the proposition that a substantive Due Process claim is made out with “improper motive.” The Khodara Court was certainly aware of the existence of Lewis because, like the Nicholas Court, it actually cites Lewis in the same paragraph where it recognizes “improper motive” as a valid Due Process, standard. See Khodara, 237 F.3d at 197.
Whether or not our post-Lewis statements are dicta need not detain us. These are affirmations by our Court stating or alluding to the law being that it is a violation of substantive due process for public officials to act intentionally with an improper motive.
Third, tossing every substantive Due Process egg into the nebulous and highly subjective “shocks the conscious” basket is unwise.[4] It leaves the door ajar for inten *407 tional and flagrant abuses of authority by those who hold the sacred trust of local public office to go unchecked. “Shocks the conscience” is a useful standard in high speed police misconduct eases which tend to stir our emotions and yield immediate reaction. But it is less appropriate, and does not translate well, to the more mundane world of local land use decisions, where lifeless property interests (as opposed to bodily invasions) are involved.[5] In this regard, it appears rather difficult to analogize the intentional and illegal denial of a building permit to the forced pumping of the human stomach, the infamous fact pattern that begat “shocks the conscience” as a term of constitutional significance. See Rochin v. California, 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952). It is the jurisprudential equivalent of a square peg in a round hole. Yet, under the Majority opinion, it is with this awkward analogy that our district courts will now struggle. The confusion and potential for disparate results across the districts will haunt us for years to come. It is our manifest responsibility as an appellate tribunal to prevent that quagmire by providing a clear standard for the bench and bar. Our “improper motive” line of land use cases serves that purpose and, even after Lewis, this Court has. not impugned its vitality. I see no legitimate reason to abandon it now.
I agree with the Majority that land use decisions are generally issues of “local concern.” But those very same decisions necessarily assume constitutional dimension when the calculated, intentional and deliberate abuse of government power is at hand. See Lewis, 523 U.S. at 846, 118 S.Ct. 1708 (“the Due Process Clause was intended to prevent government officials from abusing [their] power ....”) (citations omitted); Id. at 848-49, 118 S.Ct. 1708 (intentional conduct by government official falls at the polar end of Tort law’s “culpability spectrum” in substantive Due Process cases); Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (“Historically, [the] guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty or property”) (emphasis in original) (citations omitted); Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (“The touchstone of due process is protection of the individual against arbitrary action of government”) (citations omitted). The concern that the federal Judiciary will become a local zoning board takes a permanent back seat to the federal Judiciary’s obligation to protect the core constitutional freedoms of the American public from deliberate and intentional governmental deprivation.
In sum, I would hold fast to the scheme that is already firmly entrenched in this Circuit: In land use constitutional tort cases, the government’s conduct may be judged under an “improper motive” framework. The evisceration of this standard by the Majority today is a most unfortunate step backwards in the evolution of S 1983 as the legislative guardian of bedrock constitutional rights. I am deeply concerned that there will be consequences.
III.
Even if “shocks the conscience” is the language we must employ to the exclusion *408 of any other (which it is not), the alleged behavior in this ease resolutely shocks the conscience. Public officials, sworn to uphold the law, deliberately extracted money, knowing that it was improper for them to do so. In contemporary America, under compelling norms of basic human decency, it would be shocking that such officials improperly and illegally obtained money in matters that come before them. There is little if any distinction between the taking of money for the purposes alleged in this ease, and money taken to line the officials’ individual pockets. For all of the foregoing reasons, I must dissent.

. The District Court likewise interpreted the previous panel's opinion as "[holding] that 'the [District [C]ourt properly analyzed each supervisors’ request for qualified immunity on summary judgment.’ ” Record at 7A (August 15, 2001 District Court Order) (emphasis added).

. 9.1 Policy of Avoiding Intra-circuit Conflict of Precedent.
It is the tradition of this court that the holding of a panel in a precedential 'opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.
3d Cir. I.O.P. 9.1 (July 2002).

. The section provides:
(e)(1) ... [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured, the claim of a creditor, to the extent that—
(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.
11 U.S.C. SS 502(e)(1), (e)(1)(B).

. Not long ago, this Court, sitting en banc, described the shocks the conscience test as "amorphous” and "imprecise." Fagan v. City of Vineland, 22 F.3d 1296, 1308 (3d Cir.1994) (en banc). The improper motive test, however, has been applied numerous times in this Circuit, appears to work well, and the Su *407 preme Court has never indicated that such a standard is inappropriate in the land use context.

. I have never seen a movie or television show devoted to the workaday world of zoning and planning. Visual entertainment based on high speed police pursuit, and the riveting events of criminal law and procedure, however, is commonplace.