**John BALLEN, Plaintiff,**

v.

**MARTIN CHEVROLET–BUICK OF DELAWARE, a Limited Partnership, Defendant.**

**Civil Action No. 94–484 MMS.**

United States District Court, D. Delaware.

July 23, 1998.

---

Michael R. Ippoliti, of Becker, Becker & Ippoliti, P.A., Wilmington, DE; of counsel: Alan Epstein, of Jablon, Epstein, Wolf & Drucker, Philadelphia, PA, for Plaintiff.

David S. Lank, of Theisen, Lank, Mulford & Goldberg, Wilmington, DE, for Defendant.

### OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. Introduction

On September 26, 1994, plaintiff John Ballen ("Ballen"), an African–American, filed a complaint against Martin Chevrolet–Buick ("Martin"), a limited partnership operating new and used car dealerships in Newark, Delaware, alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. A trial ended with a hung jury on October 4, 1996. On March 26, 1997, a second jury found against Martin in the amount of $239,048: $44,048 in back pay, $35,000 in general compensatory damages for emotional distress and humiliation, and $160,-000 in punitive damages. Judgment was entered on March 27, 1997. Subsequent to the verdict, Ballen moved to add and/or substitute defendants based on the transfer of Martin's assets to other entities after Ballen filed his discrimination Complaint.

■ On March 25, 1998, defendant filed a motion to recuse the presiding judge, Honorable Murray M. Schwartz (hereinafter referred to as "Judge Schwartz"), pursuant to 28 U.S.C. § 455(a) (1988). The basis for the recusal motion has two prongs: 1) rulings made by Judge Schwartz both prior to judgment[1] and post-judgment in the case captioned *John Ballen v. Martin Chevrolet–Buick of Delaware, a Limited Partnership*, and 2) an extrajudicial ground. Each of the alleged two major bases for recusal will be discussed separately after first setting out the general law on recusal. The pertinent facts will be set out in the discussion of the respective main bases for recusal. For the reasons which follow, the motion for recusal will be denied.

### II. A Brief Overview of the Law of Recusal

■ Defendant has based its recusal motion on 28 U.S.C. § 455(a). Docket Item ("D.I.") 140. 28 U.S.C. § 455(a) provides:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

1. Presumably these matters were raised on appeal. It is unnecessary therefore to review Martin's pre-judgment bases for recusal as the Third Circuit Court of Appeals has affirmed the Court's prejudgment opinions and orders. *See Ballen v. Martin Chevrolet–Buick of Delaware,* No. 97–7463, slip op. (3d Cir. July 17, 1998).

The duty to recuse is grounded in the due process clause. *See In re Murchison,* 349 U.S. 133, 136–39, 75 S.Ct. 623, 99 L.Ed. 942 (1955). While the standards differ for recusal motions brought under 28 U.S.C. § 144 [2] from those brought under 28 U.S.C. § 455(a), only the latter is relevant in the consideration of the pending recusal motion. The Third Circuit Court of Appeals teaches that on a recusal motion based upon 28 U.S.C. § 455, "[t]he applicable inquiry is whether 'a reasonable [person] knowing all the circumstances would harbor doubts concerning the judge's impartiality.'" *United States v. Vespe,* 868 F.2d 1328, 1341 (3d Cir.1989) (citing *United States v. Di Pasquale,* 864 F.2d 271, 279 (3d Cir.1988)) (quoting *Edelstein v. Wilentz,* 812 F.2d 128, 131 (3d Cir.1987)). The Third Circuit appellate court has continually adhered to this standard. *See Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253, 266 (3d Cir.1995) (citing *United Sates v. Dalfonso,* 707 F.2d 757, 760 (3d Cir.1983)). Accordingly, because the inquiry is an objective one, the judge's actual subjective bias is not at issue, only the appearances of such bias. *See In re Antar,* 71 F.3d 97, 101 (3d Cir.1995) (hereinafter *"Antar II"*) ("[The] inquiry focuses not on whether the judge actually harbored subjective bias, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias.").

### III. Judicial Rulings or Actions as a Basis for Recusal

With respect to defendant's first basis for recusal, that is, judicial rulings or actions by Judge Schwartz as a basis for recusal in the post-judgment phase of the *Ballen* litigation, the Supreme Court has provided guidance. In *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Court took upon itself to reexamine the extrajudicial source doctrine, stating that an extrajudicial source was not a prerequisite to a finding of personal bias. *See id.* at 550, 114 S.Ct. 1147. The Court remarked, however,

that in all but the "rarest circumstances" recusal will involve bias from extrajudicial sources. *Id.* at 555, 114 S.Ct. 1147. Thus, "judicial rulings alone almost never constitute [sic] valid basis for a bias or partiality motion." *See id.* at 555, 114 S.Ct. 1147 (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

Defendant points to numerous instances during the post-judgment phase which it believes puts Judge Schwartz' impartiality into question. Specifically, defendant questions Judge Schwartz': 1) allegedly instructing plaintiff on how to issue blanket subpoenas for post-judgment purposes, 2) allegedly commenting on defendant's unwillingness to settle the matter in the post-trial stage of the litigation, 3) allegedly issuing discovery interrogatories to defendant on behalf of plaintiff, 4) accepting allegedly unverified and unsubstantiated allegations in post-trial motion practice, and 5) allowing plaintiff to conduct post-trial discovery through motions to compel and otherwise.

The recusal inquiry becomes whether, when considered objectively, the five bases, either singly or collectively, display the requisite deep-seated favoritism or antagonism that would make fair judgment impossible. *See Blanche Road,* 57 F.3d at 266. A court's judicial rulings or actions taken during the post-judgment phase of the *Ballen* case must be viewed against the background of numerous, petty discovery disputes sparked by both litigants and their inability to move the case toward a posture where it would be in a position to be presented for judicial resolution.

#### A. *September 16, 1997 Order*

Defendant alleges that Judge Schwartz, in his Order of September 16, 1997, instructed plaintiff on the proper method of seeking discovery from non-parties, i.e., by issuing subpoenas and then sanctioning the use of blanket subpoenas whose terms could not be

**2.** 28 U.S.C. § 144 recites, in pertinent part:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

met by the time of the applicable hearing date. All one has to do is review D.I. 106 and 108 (Ballen's Memorandum in Support of His Motion to Compel and Martin's Response to Motion to Compel) to realize that Judge Schwartz simply ruled on the basis of the memoranda in a manner to move litigation forward. Judge Schwartz merely ruled in accordance with the Federal Rules of Civil Procedure.[3] It is believed David Lank ("Lank"), Esquire, defendant's counsel, has inadvertently denigrated plaintiff's counsel, Alan Epstein's ("Epstein") knowledge on how to issue subpoenas. Similarly, it was simply Judge Schwartz' judgment that the requested document production required by the subpoenas was not so voluminous that it could not be timely produced given the lengthy time lapse since the production of the documents had been litigated and defendant's knowledge that there was always the possibility it would not prevail on its objection to the subpoena. Given this background, defendant's contention with regard to the issuance of blanket subpoenas during the post-judgment proceedings fall well short of displaying "deep-seated favoritism or antagonism that would make fair judgment impossible." *See Blanche Road*, 57 F.3d at 266.

### B. *Post–Judgment Discovery*

Defendant alleges Judge Schwartz carried out post-judgment discovery on behalf of the plaintiff. This contention must be viewed in conjunction with a combination of Judge Schwartz' mounting frustration with this three year old case and the passage of eleven months since the entry of judgment. To facilitate resolution, Judge Schwartz did propound discovery to defendant on February 27, 1998. However, Judge Schwartz' action must be viewed in conjunction with the letter of the same date which he sent to counsel which reads as follows:

**3.** The September 16, 1997 Order in pertinent part states:

    1. Defendant's position that Rules 30, 33 and 34 do not apply to nonparties as set forth in paragraph 13 of its response is only partially correct:

      (a) Under Rule 30 depositions may be taken of any party.

On this date I entered a self-explanatory order, a courtesy copy of which is enclosed. I am very much aware that one could persuasively argue the Court has thrust itself into an advocacy role, a sphere properly reserved to the attorneys. The implied criticism would not be warranted. **The simple fact of the matter is this case is over three years old and has been kicking around eleven months since judgment was entered. The reality is all of that which has been ordered to be answered in affidavit form and supporting documentation produced would have been raised by me at oral argument on March 16th. Counsel would understandably be unable to answer the questions and further discovery, discovery disputes and delay would occur.** I expect full and timely compliance by defendant. Further, defendant shall resolve any ambiguities or doubts in answering any question or producing documentation against itself.

*See* Letter to Counsel, February 27, 1998 (emphasis added). When viewed objectively, the only possible conclusion is Judge Schwartz sought to speed the matter toward final judicial resolution, given the age of the case and judgment. It is concluded these actions similarly do not evidence a deep-seated favoritism or antagonism on the part of Judge Schwartz and that recusal on this basis is also unwarranted.

### C. *Settlement Colloquy*

There is no question Judge Schwartz raised the possibility of settlement as he does in almost every case. However, whether he unfairly commented on the defendant's unwillingness to settle is another matter. The record is clear as to what occurred:

THE COURT:... Apparently, *the parties just don't want to settle this matter.*

    (b) Under Rule 33 interrogatories are limited by the terms of the Rule to parties.

    (c) Rule 34 is not limited to parties. However, a person not a party to an action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45.

MR. LANK: No question they want to settle. The policy limits were offered and they were rejected, your Honor. It's not a question of wanting to settle. The question is what will Mr. Epstein accept.

. . . . . . . . .

THE COURT: And *the parties* have absolutely no interest in pursuing settlement—

. . . . . . . . . .

MR. LANK: Your Honor, if it means that entities that were not parties to this case are supposed to come up with money to pay Mr. Epstein and his client, the answer is no.

. . . . . . . . . .

THE COURT: Then we have to consider the case is not settleable at this point.

*See* D.I. 144 at 7–9 (emphasis added). The above record reflects the Court did not unfairly place the blame on either side for not settling. Moreover, *Liteky* teaches

> . . . opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky*, 510 U.S. at 555, 114 S.Ct. 1147.

There remains Judge Schwartz' alleged actions in regard to allowing additional post-judgment discovery and allegedly accepting unverified or unsubstantiated allegations in the post-judgment phase. First, these alleged bases for recusal are lacking in specificity so as to preclude a recusal assessment. Second, they do not in and of themselves warrant recusal to the extent they might have merit. *See Liteky*, 510 U.S. at 555, 114 S.Ct. 1147. Third, the generalized tenor of the charges suggest they are grist for the appeal mill, not as bases for recusal.

For the reasons stated above, the motion to recuse will be denied with regard to judicial rulings or actions taken post-judgment in conjunction with the *Ballen* case. Whether taken singly or collectively, defendant has failed to objectively demonstrate Judge Schwartz harbored a deep-seated antagonism toward it, favoritism toward the plaintiff, or that it was impossible for there to be a fair judgment on the remaining post-judgment issues.

## IV. Extrajudicial Basis for Recusal

■ Having concluded recusal is not warranted based on judicial rulings and actions, the Court turns its attention to the one allegedly extrajudicial ground for recusal. In order to understand the asserted extrajudicial basis for recusal, it is necessary to provide a brief overview of the extrajudicial occurrence and the procedure that was employed to resolve the matter. On May 8, 1997, Judge Schwartz filed allegations of misconduct by a court employee pursuant to Appendix III, Rule 15 of the Rules of the Judicial Council of the Third Circuit. The allegations consisted of five counts:

> Count I involved the failure to maintain an appearance of neutrality in what will be called the Sparber trial. The failure to maintain the appearance of neutrality arose when in Judge Schwartz' view a court employee aligned himself with the defendant, both because of where he was sitting in the spectator section and to whom he was speaking, all while the jury was present in the courtroom.
>
> Count II involved disruptive behavior by the same court employee during the taking of the verdict in the Sparber trial. The disruptive behavior consisted of the court employee partially opening one of the main doors to the courtroom one or more times and rattling the doors after the same were locked as a response to the court employee's opening the door by Gene Maloney, a court security officer. All of this behavior occurred during the taking of the verdict.
>
> Count III was based on the statement allegedly made to Alan Epstein, Esquire, immediately following the verdict when, in response to a question from Mr. Epstein as to the size of the verdict ($19,000,000 plus dollars) in favor of a young wheelchair-bound woman, the court employee

allegedly said, "Fuck her," immediately outside the courtroom where Judge Schwartz took the Sparber verdict.

Count IV involved the same court employee's conduct during recesses in the Ballen trial (a race discrimination trial) which was being tried while the jury was out and deliberating in the Sparber trial. The court employee allegedly came into the courtroom during breaks and without acknowledging the plaintiff's presence, spoke with David Lank, Esquire, counsel for defendant in the Ballen trial and, it later developed, Michael Kardon ("Kardon"), the principal representative of the defendant. Kardon was the person who terminated Ballen, which firing the jury found was because of his race.

Count V involved an alleged incident · on May 1, 1997, when Epstein appeared before Judge Schwartz in a case unrelated to the Sparber or Ballen cases. Allegedly the court employee upon seeing Epstein in the courthouse gave him a prolonged hostile stare.

The allegations had attached to it a court E-mail to Judge Robinson requesting the court employee be kept out of the Sparber courtroom except when performing official duties, a letter from Epstein memorializing a telephone conversation initiated by Judge Schwartz relating to Counts II, III and IV, a memo from Gene Maloney, court security officer, relating to Count II, and a memo from Kevin Maurer, court reporter, relating to Count III. Each count of the allegations alleged violations of varying sections of the Code of Conduct for Judicial Employees. Only Counts II, II and IV are involved in the recusal motion.

The May 8, 1997, allegations were responded to by the court employee on June 12, 1997. Attached to the answer were three letter exhibits from attorneys who the court employee felt might contribute helpful information in defense of the allegations. All

three attorneys have cases pending before Judge Schwartz. One of the letters was authored by Lank.

The format chosen by the active judges, for what was essentially an administrative personnel matter, was a hearing at which Chief Judge Farnan presided and Judges Robinson and McKelvie were on the "bench." [4] There was a court reporter present and all witnesses, including Judge Schwartz, testified under oath. All witnesses appeared voluntarily, i.e., without being subpoenaed, were sequestered, and left the hearing room after they testified. Further, witnesses in support of the allegations were placed in a room separate from those who were expected to testify for the court employee. The hearing began at 9:08 a.m. and concluded at 4:30 p.m., generating 232 pages of transcript.

Early on in the hearing Judge Schwartz inquired whether he was to be an advocate or presenter in the proceeding. Chief Judge Farnan instructed, "Essentially, a presenter as the accuser. But certainly if you want to advocate a particular position in addition to presenting, you can do that." *See* Administrative Personnel Hearing Transcript ("APH Tr.") 15. Cast in the role of presenter, Judge Schwartz adopted a non-confrontational, even-handed approach, in questioning all witnesses, those in support of the allegations and those in defense of the court employee.[5]

At the hearing all witnesses were subject to questioning. That is, Judge Schwartz presented the allegations and witnesses who supported the allegations. Judge Schwartz and those witnesses were then questioned by counsel for the court employee. Similarly, the court employee was questioned by Judge Schwartz as were his three witnesses, all of whom happened to be attorneys.

Judge Schwartz could only testify as to his own knowledge and observations with respect to Count II. In addition, the chief of

---

4. The hearing was not held in a courtroom, but in the grand jury room.

5. Perhaps nothing in the transcript reflects the restraint of Judge Schwartz more than the following instance: In light of an outrageous, unsubstantiated attack by the court employee upon

him and Epstein, Judge Schwartz did nothing but give the court employee three successive opportunities to unequivocally withdraw the charge. *See* APH Tr. 72–74. Judge Schwartz met the unsubstantiated statement by addressing questions to Epstein. *See* APH Tr. 104–05.

security testified as to the opening of the door by the court employee, the locking of the same by the court security officer and thereafter the rattling of the door. *See* APH Tr. 86–88. Epstein, who was in the hall, testified he saw the court employee rattle and open the door. *See* APH Tr. 113. The court employee acknowledged he opened the door, but denied rattling the door, although he did concede he had words with the court security officer following the verdict over the right of the security officer to lock the door. *See* APH Tr. 66–69. Lank testified he was sitting in the back of the courtroom with the door in back of him and to his right and was looking to his left at the jury as it pronounced its verdict. *See* APH Tr. 180–183. He asserted he never saw the door open and never heard the door rattle. *See id.* He also testified he knew the court employee for 15 years, *see* APH Tr. 168–169, and, in his letter attached as Exhibit 2 to the court employee's answer, acknowledged that he knew the court employee both "professionally and personally because our children attended the same grade school." *See* APH Tr. 169.

At to Count III, Epstein testified as to the epithet uttered by the court employee in response to a question from Epstein as to the size of the verdict. *See* APH Tr. 114. In addition, Kevin Maurer, the court reporter for the Ballen trial, and Linda Jenkins, an acting courtroom deputy, testified that immediately after the Sparber verdict while waiting to resume the Ballen trial, Epstein came into the courtroom and related what had just been said to him by the court employee. *See* APH Tr. 217–218; 226–227. They also recited Epstein's demeanor while making the statement and that they had no reason to believe he was not telling the truth. *See id.* John A. Parkins, Jr., Esquire, also was called by the court employee, but since he remained in the courtroom, he had no opportunity to observe what occurred after the verdict. *See* APH Tr. 201–202. Lank essentially testified that he left the courtroom, talked briefly to Epstein, and that he saw no contact between the court employee and Epstein following the verdict. *See* APH Tr. 174–176.

Count IV occurred during recesses in the Ballen trial and so Judge Schwartz was not present. Epstein testified the court employee came into the courtroom on several occasions and talked to Lank. *See* APH Tr. 122–123. He personally did not see the court employee talk to the main representative of Lank's client, Kardon. *See* APH Tr. 123. The court employee in his response to the allegations admitted the Count in its entirety. *See* Response to Complaint at 1. Judge Schwartz in his role as presenter, as distinguished from being embroiled in an adversary hearing, inquired whether the court employee intended to agree he had violated Canons 1 and 2 of the Code of Conduct for Judicial Employees. *See* APH Tr. 75. The court employee quickly recanted. *See* APH Tr. 75–76. Lank testified conversations did take place, but the only conversation in the courtroom took place after all evidence had been presented and the jury was deliberating. *See* APH Tr. 170. Other than the one conversation in the courtroom while the jury was deliberating, Lank testified the court employee did not talk to him in the courtroom at any time. *See id.* He was specific that the conversations during recess took place outside the courtroom, but did state he was testifying to the best of his recollection and there was a possibility that there could have been a conversation in the courtroom. *See* APH Tr. 185–187. He also added in conformity with his letter to Judge Farnan that the court employee also talked with defendant's representative, Kardon. *See* APH Tr. 170.

From the above recitation of what took place during the hearing before the three active judges, several non-controvertible facts emerge:

1. Judge Schwartz only had direct knowledge of the events in Count II.

2. Counts III and IV were developed through witnesses, both in support of and against the allegations.

3. Lank and Epstein testified with respect to all three counts and in turn were questioned by Judge Schwartz with respect to each of the counts; with respect to Counts II and III, Lank's testimony was limited to what he did not see and was contrary to that of Epstein, and in the case of Count II, also opposite to that of the court security officer.

4. Lank was only directly involved with Count IV, that is, whether the court reporter came into the courtroom during recesses in the Ballen trial.

5. The May 6, 1998, administrative personnel hearing was limited to the conduct of the court employee and in no way touched upon the merits of the Ballen case.

The hearing also yielded some anomalies. First, Judge Schwartz, upon learning of the format of the hearing, anticipated it would be the directive of the three judges to act as a presenter. As a consequence, he opted not to discuss the potential testimony of any witness in advance of the hearing, even though a year had elapsed since the events described in the allegations had taken place. *See* APH Tr. 84 (Maloney), 101–102 (Epstein), and 230 (Jenkins). Second, Judge Schwartz in questioning the court employee's witnesses simply ascertained with precision their positions, irrespective of whether the answers were likely to support or controvert the allegations. Thirdly, Judge Schwartz pointed out to the court employee in one instance that the court employee probably did not wish to admit he had violated the Code of Conduct for Judicial Employees so as to afford him an opportunity to retract the admission. *See* APH Tr. 75.[6] Fourth, and perhaps most importantly, the procedure employed by the active judges thrust Judge Schwartz into an active role at the hearing on the allegations, a role which could not be anticipated when the allegations were filed. He, at the direction of the court and while under oath, presented the allegations and was subject to cross-examination by the court employee's attorney. He also had to present witnesses in support of the allegations and question those witnesses who testified in support of the court employee. Judge Schwartz' questions to the court employee's witnesses are probably not technically cross-examination as that term is used in an adversarial hearing. However, for purposes of this opinion it will be called cross-examination.

6. That is not to say Judge Schwartz was always a paragon of virtue when questioning the court

It is the Court's understanding that Judge Schwartz' questioning of David Lank, Esquire, counsel for defendant in the Ballen case, is the conduct which defendant believes should lead to recusal by reason of extrajudicial activity. The issue then becomes whether, under 28 U.S.C. § 455(a), a judge should recuse himself by reason of his cross-examining an attorney in an unrelated administrative personnel matter where the attorney is also involved in a case where judgment has been entered but post-judgment proceedings in aid of collection of the judgment are ongoing. The Third Circuit Court of Appeals has not squarely passed upon the question. However, a fair reading of *Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253 (3d Cir.1995), when read in conjunction with *United States v. Vespe,* 868 F.2d 1328 (3d Cir.1989), *United States v. Bertoli,* 40 F.3d 1384 (3d Cir.1994) (hereinafter *"Bertoli II"*), and *United States v. Antar,* 53 F.3d 568 (3d Cir.1995) (hereinafter *"Antar I"*), persuades the Court that a judge should recuse under 28 U.S.C. § 455(a) where there is manifested deep-seated antagonism against the attorney "that would render fair judgment impossible." However, the judicial bias against the attorney in the form of hostility or antipathy must be of such degree so as to adversely affect the client's interest. *See generally* Carol Schultz Vento, Annotation, *Disqualification of Judge for Bias Against Counsel for Litigant,* 54 A.L.R. 5th 575 (1997).

In *Blanche Road Corp. v. Bensalem Township,* the Third Circuit appellate court after indicating its willingness to dispense with the external source doctrine held it was not an abuse of discretion for the trial judge not to recuse himself where the district judge rebuked counsel for poor performance and alleged maneuvering of witnesses:

> After reviewing the record in this case, however, we do not find that the district judge's actions demonstrated the type of bias warranting his recusal from the case. Although it is true that at times the judge criticized plaintiffs for attempting to mislead the jury and became short-tempered with plaintiffs' counsel, these comments

employee. *See* APH Tr. 50–51, 55–56.

appear to arise from the judge's impatience and frustration with the manner in which plaintiffs were trying their case, rather than any partiality for defendants. As Justice Scalia wrote in *Liteky:*

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

510 U.S. 540, 114 S.Ct. at 1157. Accordingly, because the district judge's actions and comments did not manifest a deep-seated bias that would render fair judgment impossible, we find that he did not abuse his discretion in not recusing himself from the second trial.

*Blanche Road Corp.,* 57 F.3d at 266; *see also United States v. Martorano,* 866 F.2d 62, 68–69 (3d Cir.1989) (district judge did not abuse his discretion by denying a recusal motion which was predicated on the district judge's testimony as a character witness at the defendant's then counsel's tax evasion trial and on a co-defendant's testimony that the district judge physically assaulted the co-defendant during the co-defendant's separate criminal trial).

In *United States v. Vespe,* 868 F.2d 1328 (3d Cir.1989), the district judge held an investigatory hearing as to whether a prosecution witness may have been intimidated. *See Vespe,* 868 F.2d at 1340. It was alleged the trial judge assumed the role of a prosecutor even though attorneys conducted the examination. *See id.* at 1341. The appellate court held the district judge did not have to recuse himself because there was no evidence that the judge had a predisposition to believe the allegations and the investigation was made with no purpose other than determining what actually occurred. *See id.*

In *Bertoli II,* there was no less than four motions to recuse the trial judge, all of which were denied and upheld on appeal, even when there was some hint at animus among

the trial judge, Bertoli, and Bertoli's counsel. *See Bertoli II,* 40 F.3d at 1412 (citing *United States v. Bertoli,* 994 F.2d 1002, 1025 (3d Cir.1993) (hereinafter *"Bertoli I "*)). *Bertoli II,* however, did not involve an extrajudicial source.

On the other hand, recusal was required in *Antar I.* The trial judge stated on the record: "My goal in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." *See Antar I,* 53 F.3d at 573. As this goal could only be aided if defendants were convicted, the appellate court concluded that a "reasonable observer would think that the judge ... had the goal in the trial · of recovering substantial funds from the appellants, a goal which their convictions would help him reach." *See id.* at 577. Because such a goal was entirely improper in a criminal case, the appellate court held that the trial judge should have recused himself *sua sponte. See id.* at 579.

Neither the parties nor the Court has been able to find any case involving recusal where a district judge brought allegations against a court employee in essentially what must be considered a personnel matter. Further, the Court has found no case where a district judge cross-examined a witness for a court employee in the context of a personnel hearing, much less attorneys who currently have cases before the judge. However, a common thread running through the recusal cases is if a district judge is to be recused under 28 U.S.C. § 455(a), the bias against the attorney for a party must be of such magnitude that the bias or prejudice adversely affects the interest of the litigant. There is nothing that can be found in the recusal motion, or in the briefs in support thereof, which remotely suggests Judge Schwartz is biased or prejudiced against the defendant. Further, a review of the cross-examination of Lank during the personnel administrative hearing before the three active judges reveals nothing that would remotely indicate any hostility or much less reflect a deep-seated antagonism toward Lank, to say nothing of his client. The record contains no hint of animus against Lank, *see Bertoli II,* 40 F.3d at 1412,

no criticism or short-tempered conduct with respect to Lank, *see Blanche Road Corp.,* 57 F.3d at 266, and Judge Schwartz has not acted as a character witness for Epstein, *see Martorano,* 866 F.2d at 67–68. While Judge Schwartz did conduct a personal investigation of the court employee, *Vespe,* 868 F.2d at 1340–41, that investigation never touched upon any aspect of the Ballen case other than what the court employee did during recesses. Similarly, the cross-examination does not reveal any favoritism toward the plaintiff or in any way manifest a deep-seated bias that would render fair judgment impossible.

The only way the recusal motion could be granted would be to evolve a bright line principle that whenever a judge cross-examines an attorney in extrajudicial proceedings, recusal is required. Recusal would. be required without inquiry into the facts giving rise to the cross-examination and without inquiry into whether the judge has demonstrated a deep-seated antagonism against the attorney so pervasive that it would affect the client, thereby making it impossible for there to be a fair judgment on the merits.

Adoption of a bright line rule would have to surmount formidable obstacles: First, such a rule would run counter to *Liteky. See Liteky,* 510 U.S. at 555, 114 S.Ct. 1147. Second, a judge would be compelled to recuse at a minimum in all pending cases where attorneys testified at the behest of the court employee, even though they have given no indication they are uncomfortable with the judge continuing to adjudicate their cases. Third, adoption of a bright line rule could have the unintended fall-out of attorneys declining to be forthcoming with information which could be helpful to a court employee. Fourth, a bright line rule in an appropriate case could result in maneuvering for the ouster of a judge from the case. Finally and directly germane to this case, the incongruity of such a rule is apparent from the fact that Lank has not moved to recuse Judge Schwartz in another pending case in which he is counsel of record. All of the foregoing reasons counsel against adoption of a bright line rule and demonstrate the wisdom of retaining as an indispensable prerequisite for recusal because of alleged bias against an attorney that a judge have a deep-seated, pervasive antagonism against the lawyer such that the client's interests would be adversely affected.

■ Defendant has advanced a number of subsidiary bases for recusal that are related to the administrative personnel hearing. First, defendant argues the Court engaged in *ex parte* communications which presumably it should not have done. However, when queried at oral argument, the only *ex parte* communications defendant could point to were the Court's telephone conversation with Epstein and Lank. The complained of conversations did not relate to the merits of the Ballen case, but were part of Judge Schwartz' investigation into the alleged misconduct of the court employee. A judge, as a steward of the Court, has both the duty and the obligation to investigate wrong-doing on the part of court personnel. Investigations are not per se a basis for recusal. *See Vespe,* 868 F.2d at 1340–41.

The second basis for recusal is that Judge Schwartz allegedly instituted the administrative hearing at the behest of Epstein. In fact, as appears in the transcript of the personnel administrative hearing, defendant simply operated on misinformation which presumably was obtained from an unknown source. As previously rehearsed, Judge Schwartz initiated the investigation by calling Lank, Epstein and interviewing Chief Security Officer Maloney and court employees Kevin Maurer and Linda Jenkins. *See* APH Tr. 152. Further, as was developed at the hearing, Lank was supplied a copy of the allegations by the court employee. *See* APH Tr. 41. On the other hand, Judge Schwartz kept Epstein completely in the dark to the extent that he appeared at the personnel administrative hearing not knowing why he was in Wilmington, Delaware, other than having been requested to be there by Judge Schwartz. He was completely unaware allegations had been filed and did not know the precise purpose for his attending and testifying at the personnel administrative hearing.

*See* APH Tr. 101–102, 105.[7] The entire administrative personnel record consisting of the allegations and the answer and the transcript of the personnel administrative hearing make clear that Judge Schwartz sought to uphold the institutional integrity of the Delaware District Court and it was his sole decision to bring the administrative personnel allegations against the court employee. Defendant has not and indeed could not provide any evidence to the contrary.

Third, in his written submission, defendant took the position that Judge Schwartz intentionally avoided Lank and defendant's representative Kardon even though they allegedly witnessed some of the events contained in the allegations. It is believed defendant retreated from that position, conceding that Judge Schwartz was not obligated to question anybody, especially where he had not witnessed the court employee's behavior. With respect to the alleged epithet in the hallway, it is not clear how Judge Schwartz could possibly know whether Lank or Kardon observed the conduct which was the subject of the allegation. Carried to its logical extreme, if defendant's position is correct, Judge Schwartz would have had to potentially question everyone who had been in the Sparber courtroom during the taking of the verdict to determine whether they observed the court employee's conduct with respect to Count III. Finally, where both Epstein and Lank had direct knowledge of Count IV of the administrative personnel allegations, Judge Schwartz did talk to both. Judge Schwartz never talked to the respective two principals, that is, Ballen or Kardon.

Fourth, to the extent defendant's written submissions took the position that either Ballen or Kardon were involved or to be involved with the personnel administrative hearing, subsequent events conclusively establish defendant was in error. Neither Ballen nor Kardon was called as a witness either in support of or against the allegations.

In conclusion, there is no appearance of any partiality or bias on the part of Judge Schwartz, either as a result of his handling of the *Ballen* post-judgment matters or as an outgrowth of the administrative personnel hearing. Neither what occurred in Court, nor the extrajudicial ground for recusal, or a combination of the two, would cause a reasonable person to question Judge Schwartz' impartiality. Under such circumstances, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir.1992) (citing *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987)).

One other matter remains. This opinion on recusal has necessarily addressed an internal court personnel matter. Normally, the minutiae of those matters are not available to the public. It is for this reason the name of the court employee has not been revealed. On the other hand, the public has a First Amendment right to know when a litigant has sought recusal of a judge because of alleged bias. The two competing interests have been resolved in favor of the public's right to know and, therefore, the opinion will not be sealed.

Unlike the opinion, the allegations, response and May 6, 1998, hearing transcript all relate to airing of the personnel matter and will be ordered sealed. But sealing of these items creates another potential problem. These items are prominently mentioned and cited in the opinion. If the recusal decision should play a part in any appeal,

7. Q. Generally, Mr. Epstein—oh, by the way, have we discussed your testimony in any way?
    A. Not at all. To be very honest, your Honor, I didn't know that this was going to be this. You never informed me as to what the process was or why I was coming here or why I had previously forwarded you a letter. The closest I came to understanding it is when I came into the room and the officer told me that there was a proceeding.
          *    *    *    *    *    *
    Q. Have you ever seen the allegations against [the court employee] or ... responses to them?

    A. No, sir. Right now, I don't know anything about this proceeding, any allegations against [the court employee] or even what this is about.
    *See* APH Tr. 101–102, 105; *see also* APH Tr. 151.

**460**

an intelligent presentation cannot be made to the appellate court without access to the sealed materials. Accordingly, upon certification by counsel that an appeal is contemplated and counsel reasonably believes the decision on the recusal motion will be a ground for appeal, the Court will enter an order directing the Clerk of the Court to make the sealed documents available to both counsel who will be free to make such use of the materials as they deem appropriate.

An order will be entered denying defendant's motion to recuse.