**James HERON, Plaintiff,**

v.

**CITY OF PHILADELPHIA, et al., Defendants.**

**No. CIV.A. 97–4384.**

United States District Court, E.D. Pennsylvania.

Dec. 22, 1997.

Alan E. Denenberg, Philadelphia, PA, Elisa Vessal, Abramson and Denenberg, Philadelphia, PA, for Plaintiff.

Michael R. Resnick, Asst. City Sol., Philadelphia, PA, for Defendants.

## ORDER

KATZ, District Judge.

AND NOW, this 22nd day of December, 1997, upon consideration of defendants' Motion for Partial Summary Judgment, and the response thereto, it is hereby ORDERED that the said motion is GRANTED in part and DENIED in part as follows: The § 1983 claim based on excessive force against the City of Philadelphia and Commissioner Neal is dismissed with prejudice. The remainder of the motion is denied, as there are genuine issues of material fact remaining. *See* Fed. R.Civ.P. 56(c).

## MEMORANDUM

### FACTS

Plaintiff Heron was in Amici's Diner with friends in the early morning hours of August 13, 1995, after having spent some hours at a neighborhood bar. After having an argument with his girlfriend, plaintiff got up to leave the diner. On his way out, he had a confrontation with two police officers who were in the diner, defendants Officers Young and Scott, which resulted in the officers physically restraining him and placing him under arrest. The events that occurred are in much dispute: Plaintiff claims that he made one comment to the officers while walking by their table, and an officer lunged at him without provocation. Pl.Ex. B (Heron deposition). The officers say that plaintiff was acting drunk the whole time they were in the diner, including shouting, cursing, and taking a swing at his girlfriend in the course of their argument. The officers further say that when plaintiff walked by their table, he leaned on it, barely able to stand up, and cursed at them and poked one of them in the chest. Def. Ex. D (Young deposition).

Plaintiff was handcuffed and placed under arrest for intoxication. He was taken into custody and, according to a Philadelphia Police Department Directive, held in a cell until he sobered up. The officers determined that there were no outstanding warrants for the plaintiff, then released him without charging him with any crime. Def. Ex. D at 21.

Plaintiff filed this suit, bringing claims against Officers Scott and Young, Police Commissioner Richard Neal, and the City of Philadelphia. He alleges that the officers arrested him without probable cause and used excessive force in arresting him, and that the City of Philadelphia Police Department has a custom of allowing its officers to do so. He alleges violations of 42 U.S.C. § 1983 and various other civil rights statutes, as well as making various state law tort claims against the individual defendants. In the present motion for partial summary judg-

ment, defendants move for summary judgment on several of the claims, each of which will be addressed in turn below.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *See id.* at 256, 106 S.Ct. at 2514. The moving party has the burden of showing there are no genuine issues of material fact, *see Gans v. Mundy,* 762 F.2d 338, 340–41 (3d Cir.1985), and, in response, the non-moving party must produce more than a mere scintilla of evidence to create a genuine factual issue and defeat the motion. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### Section 1983 Claim Against Individual Officers Based on Arrest Without Probable Cause

Plaintiff's complaint contains a claim under 42 U.S.C. § 1983[1] against all defendants based on the allegation that Officers Young and Scott arrested Mr. Heron without probable cause. Defendants' motion argues that the officers had "overwhelming" probable cause to arrest plaintiff, based upon their observations of plaintiff's conduct.

■■■ Probable cause is present when there exist "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an

offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979). As discussed above, there is a significant factual dispute about plaintiff's behavior in the diner in the time leading up to his arrest and thus about the facts and circumstances that provided the basis for arrest. Thus, there is a genuine factual issue as to whether the officers had probable cause to arrest. *See, e.g., Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995)("Generally, the existence of probable cause is a factual issue.").

### Qualified Immunity

Defendant's second argument with regard to plaintiff's assertion of lack of probable cause is that Officers Young and Scott are immune from suit under the doctrine of qualified immunity. The basic rule of qualified immunity is that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981).

■■■ The application of qualified immunity is ordinarily an issue that should be resolved by the court on summary judgment rather than left to the jury at trial. *See Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)("Immunity ordinarily should be decided by the court long before trial."); *Rogers v. Powell,* 120 F.3d 446, 454 (3d Cir.1997)("Whether a government official is entitled to protection under the doctrine of qualified immunity is a purely legal question." (internal quotation marks and citation omitted)). This case, however, is one of the rare instances in which the question of qualified immunity cannot be decided at the summary judgment stage and must be left for the jury. In *Sharrar v. Felsing,* 128 F.3d 810, 825–27 (3d Cir.1997), the Third Circuit ruled that if the historical facts material to the issue of whether the

---

1. Plaintiff also alleges violations of 42 U.S.C. §§ 1981, 1985, 1985(3), 1986, and 1988. Defendant's motion only expressly addresses the § 1983 claims, and the court follows suit.

actions of the officers were objectively reasonable are in dispute, there is an issue for the jury. *See id.* at 827; *see also Karnes v. Skrutski,* 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination."); *accord Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993) ("It must be recognized that even though [Hunter] diminished the jury's role in qualified immunity cases, it did not entirely abolish it. Rule 56 still has vitality in qualified immunity cases if [there are] underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them."), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

In this case, the court is presented with exactly the situation that *Sharrar* reserves for the jury. The historical facts about plaintiff's behavior, and thus what Officers Young and Scott could have observed and did observe, are in dispute. With those facts in dispute, a genuine factual issue is present, and thus the issue should be decided by the jury.

*Section 1983 Claims Against the City of Philadelphia*

■ Plaintiff's complaint alleges civil rights violations by the City, including violations of 42 U.S.C. § 1983, in the form of Police Department policies or customs that trained or encourage officers to arrest without probable cause and use excessive force. "A municipality can only be liable under section 1983 when the municipality itself causes the violation." *Baker v. Monroe Township,* 50 F.3d 1186, 1191 (3d Cir.1995), citing *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989). To establish municipal liability, a plaintiff must prove, in addition to a violation of his rights, that a policy maker for the City "authorized policies that led to the violations or permitted

practices that were so permanent and well settled as to establish acquiescence." *Baker* at 1191. In addition to showing the existence of a policy or custom, the plaintiff bears the burden of proving that the City's policy was the proximate cause of the injury suffered. To establish the necessary causation, the plaintiff must demonstrate an affirmative link between the policy and the specific deprivation of rights at issue. *See Bielevicz v. Dubinon,* 915 F.2d 845, 850–51 (3d Cir.1990). The question of the existence of proximate cause is for the jury. *See id.* at 851.

■ To establish a municipal policy, plaintiff relies on Philadelphia Police Directive 128, which sets forth Department policies regarding intoxicated persons in police custody.[2] Pl.Ex. A. Plaintiff argues that this directive constitutes encouragement for officers to arrest individuals without probable cause and with no intention of charging them with a crime. This directive is enough to create a question of fact as to whether there was an affirmative link between a city policy or custom and the alleged violation of plaintiff's rights based on the claimed arrest without probable cause. *See id.* at 851.

■ Directive 128 does not, however, furnish a basis for the § 1983 claim against the City based on the alleged excessive force used by the arresting officers. On the excessive force issue, plaintiff has not produced any evidence showing that any policy maker for the City had any knowledge that police officers were violating rights of citizens. There has been no testimony or other evidence elicited from any such policy maker, and absent such evidence of a policy maker's authorization of a policy or knowledge of a problem and scienter-like indifference to it, plaintiff cannot establish the affirmative link necessary from a City policy or custom to any constitutional violation suffered by plaintiff. *See Baker,* 50 F.3d at 1191. Thus, the § 1983 claim against the City of Philadelphia based on excessive force is dismissed with prejudice.

---

2. In substance, the Directive instructs that a person arrested and charged only with intoxication will not be fingerprinted or photographed. If the person is twenty-one years of age or older, the person is detained until he or she regains full control of his or her faculties or until an adult household member accepts responsibility for accompanying the intoxicated person home.

*Section 1983 Claims Against Commissioner Richard Neal*

 Plaintiff's complaint alleges civil rights violations, including claims under 42 U.S.C. § 1983, by Police Commissioner Neal in the form of Police Department policies or customs and conspiracies with the individual officers. "It is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate which violates a citizen's constitutional rights." *Blanche Rd. Corp. v. Bensalem Township*, 57 F.3d 253, 263 (3d Cir.1995), citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). In order to hold the Commissioner individually liable for alleged civil rights violations by police officers, the plaintiff must show some affirmative conduct on the part of the Commissioner. Plaintiff must prove the Commissioner's "personal involvement in the alleged wrongs .... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).

 The reasoning related to Directive 128 discussed above applies equally to the claims against Commissioner Neal. Because the directive was "issued by command of the Police Commissioner," it creates a factual issue about the Commissioner's personal involvement in the alleged civil rights violation based on arrest without probable cause. Again, though, this is not the case as to the excessive force claim. Plaintiff has not adduced any sort of evidence tending to prove any personal involvement or affirmative conduct of Commissioner Neal with regard to the alleged constitutional deprivation suffered by the plaintiff due to the excessive force used by the arresting officers. Therefore, the § 1983 claim against him based on excessive force is dismissed with prejudice.

*Immunity From State Law Tort Claims*

Plaintiff's complaint includes pendent state law claims alleging common law torts of assault and battery, false arrest, and false imprisonment against Officers Young and Scott, and intentional infliction of emotional distress against Young, Scott, and Commissioner Neal. Defendants' motion claims that they are immunized against these tort claims by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541 *et seq.*

 Section 8541 of the Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," subject to exceptions for negligent acts by the agency or its employee within certain enumerated categories. Section 8545 extends the Act's immunity to an employee who causes injury while acting within the scope of his or her employment. An employee is not immune, though, if it is judicially determined that the act by the employee that caused the injury was "willful misconduct." § 8550. The Pennsylvania courts have in the past held the phrase "willful misconduct" to be synonymous with "intentional tort." *See, e.g., King v. Breach*, 115 Pa.Cmwlth. 355, 540 A.2d 976, 981 (1988). In *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293–94 (1994), the Pennsylvania Supreme Court held that claims of assault and battery and false imprisonment in the context of police misconduct might but do not necessarily constitute "willful misconduct" under § 8550. Because each of the torts alleged is based on acts that might be willful misconduct, the defendants are not entitled to immunity for them, and these claims survive summary judgment. *See Devivo v. Philadelphia Parking Auth.*, 1997 WL 734002 at *3 (E.D.Pa. Nov.6, 1997) (J. Pollak); *see also DiJoseph v. City of Philadelphia*, 947 F.Supp. 834, 843 (E.D.Pa. 1996).