**Marcus TURNER, Plaintiff,**

v.

**CITY OF PHILADELPHIA, City of Philadelphia Housing Police Department, Philadelphia Housing Authority Police Officer Ariel Morales, Badge No. 654, Defendants.**

Civ. A. No. 98–693.

United States District Court,
E.D. Pennsylvania.

Sept. 29, 1998.

---

**5.** *Lesoon v. Commissioner of Internal Revenue,* 141 F.3d 1185, No. 97–9014, 1998 WL 166114, *1 (10th Cir.).

Adam Rodgers, Philadelphia, PA, for Marcus Turner.

Michael Pileggi, Philadelphia Housing Authority, Philadelphia, PA, Michael R. Resnick, City of Philadelphia Law Dept., Philadelphia, PA, for City of Philadelphia.

Michael Pileggi, Philadelphia Housing Authority, Philadelphia, PA, for City of Philadelphia Housing Police Department, Ariel Morales.

## MEMORANDUM AND ORDER

KATZ, District Judge.

*Factual Background*

In this action, plaintiff Marcus Turner alleges violations of his constitutional rights by the Philadelphia Housing Authority (PHA) and one of its police officers. He claims that on February 13, 1996, he was standing on the sidewalk at 4811 Tackawanna Street, in Mill Creek Apartments, a PHA development, when defendant Ariel Morales, a PHA police officer, ran toward him. He then alleges that he proceeded into his home and was immediately followed by Morales, who tackled, handcuffed, and beat him. Plaintiff states that Morales searched his home, threatened his mother, forced him into a police car, and drove him to an unknown location next to I-95 and released him from the car. Based on these claims, plaintiff brought suit in federal court under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and also stated claims for assault and battery under Pennsylvania law. The defendant City of Philadelphia has since been dismissed by stipulation. Defendants Philadelphia Housing Authority and Ariel Morales now move for summary judgment, arguing that there is no basis for municipal or official capacity immunity. For the following reasons, the motion will be granted.

*Discussion* [1]

*Section 1983 Claims*

 Turner's claims against the PHA must rest on the theories of municipal liability set forth in *Monell v. Department of So-cial Services*, 436 U.S. 658, 690–91, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *City of Canton v. Harris*, 489 U.S. 378, 380, 390–92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). While *Monell* establishes that municipalities are "persons" subject to suit for section 1983 purposes, the resulting liability is not without limits. Unless the plaintiff can demonstrate the existence of an affirmative policy of the type at issue in *Monell*, the plaintiff must assert that the municipal defendants followed an unconstitutional custom; no § 1983 liability exists on a *respondeat superior* theory. *See Harris*, 489 U.S. at 392, 109 S.Ct. 1197; *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018; *Baker v. Monroe Township*, 50 F.3d 1186, 1191 (3d Cir.1995), citing *Harris*, 489 U.S. at 385, 109 S.Ct. 1197. The Third Circuit has articulated the difference between section 1983 liability based on policy and § 1983 liability based on custom as follows:

> policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices ... [are] so permanent and well settled' as to virtually constitute law.

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1086, 137 L.Ed.2d 219 (1997) (same). The existence of a custom or a policy must be established by evidence that

---

1. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. See *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986). In other words, if the evidence pre-sented by the parties conflicts, the court must accept as true the allegations of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the movant does not have the burden of proof on the underlying claim or claims, that movant has no obligation to produce evidence negating its opponent's case, but must merely point to the lack of any evidence supporting the non-movant's claim. When the party moving for summary judgment is the party with the burden of proof at trial, and the motion fails to establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992).

the decisionmaker is responsible for the policy or acquiesced to the custom. *See Andrews,* 895 F.2d at 1480; *Beck,* 89 F.3d at 971; *Fletcher v. O'Donnell,* 867 F.2d 791, 793 (3d Cir.1989). While a plaintiff does not have the burden of identifying a single individual who established a given policy, he or she must identify a particular practice that is "so permanent and well-settled as to have the force of law." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990) (internal punctuation omitted).

 Even if a plaintiff claiming municipal liability under § 1983 can demonstrate the existence of such a custom or policy, he or she must also prove that "the municipal practice was the proximate cause of the injuries suffered," and in so doing establish a "plausible nexus" or an "affirmative link" between the policy/custom and the specific deprivation alleged. *Bielevicz,* 915 F.2d at 850 (citations omitted); *see also Kneipp v. Tedder,* 95 F.3d 1199, 1213 (3d Cir.1996). While plaintiffs need not show that a given harm was the direct result of a formal decisionmaking process, a plaintiff must demonstrate that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the] injury." *Bielevicz,* 915 F.2d at 851.

 Finally, a plaintiff must present sufficient evidence to maintain § 1983 liability. Absent unusual circumstances, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incidents includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker...." *Oklahoma City v. Tuttle,* 471 U.S.

808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).[2]

 In this case, the plaintiff has demonstrated no evidence to indicate the existence of a policy or custom such as would suffice to establish municipal liability. Plaintiff's Amended Complaint simply alleges that the PHA had "de facto policies, practices and customs" that led to the assault in question. *See* Amended Compl. ¶ 20. In particular, plaintiff cites "the failure to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers engaged in the excessive and unconstitutional use of force," *id.* at ¶ 21, and suggests that such failure amounts to "deliberate indifference." *Id.* In the Plaintiff's response to Defendants' Motion for Summary Judgment, he argues that he has met his burden of demonstrating a custom or policy by showing a "systematic pattern on the part of defendant Officer Morales in which it was confirmed that Officer Morales' personnel file contains several complaints of police brutality on the part of Officer Morales against citizens of this Commonwealth." Plaintiff's Reply to Defendant's Motion for Summary Judgment. He also contends that Morales' deposition "further revealed that the defendant PHA had full knowledge of the several unconstitutional acts by Officer Morales and did nothing to properly supervise, screen, adequately train, discipline, or impose any type of reprimand Officer Morales." *Id.*

The only proof offered by the plaintiff in response to the motion for summary judgment is a deposition of Officer Morales. The court has been provided with no other supporting evidence such as copies of complaints against Officer Morales or other PHA officers, depositions of PHA officials, personnel policies, or training policies. Indeed, the

**2.** Plaintiff's Reply to Defendants' Motion for Summary Judgment relies on *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), for the proposition that municipal liability may be based on a single incident. Plaintiff is correct that these two cases do hold that a policy need not be long-standing for a plaintiff to recover under a municipal liability theory. *See Pembaur,* 475 U.S. at 478, 106 S.Ct. 1292. However, the Supreme Court addressed this issue in *Tuttle*

when it contrasted the *Tuttle* plaintiff's general allegation of inadequate training based upon the improper force used by an officer in one incident with the policy at issue in *Monell* itself which, by its very terms, violated the constitutional rights of all pregnant employees. *See Tuttle,* 471 U.S. at 822, 105 S.Ct. 2427. As the court noted, "[o]bviously, it requires only one application of a policy such as this to satisfy fully *Monell*'s requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality's official policy." *Id.*

plaintiff does not identify any incident other than the one in which he was himself involved that would tend to show the existence of a custom within the PHA of acquiescing in unconstitutional behavior by officers except for those obliquely referred to by Officer Morales in his own deposition. *See Tuttle,* 471 U.S. at 812, 105 S.Ct. 2427.

Even examining the deposition in the light most favorable to the plaintiff, the proof contained in the deposition is insufficient to maintain a suit for municipal liability. Initially, Officer Morales denies ever having been the subject of disciplinary action while working at a correctional institution or as a part-time officer for two different townships prior to his employment at the PHA. *See* Deposition of Officer Morales 7–11. While Officer Morales agrees that he was not trained specifically by the PHA when he was hired by that entity, he asserts that he was previously trained at the Delaware County Policy Academy while employed in the prison system. *See id.* at 14–15. Officer Morales suggests that the PHA had to accept this training and could not require him to take additional training. *See id.* at 15.[3] Officer Morales also stated that he received refresher training, including training in the law, *see id.* at 16, and that he complied with the hourly and yearly training requirements when he applied to the PHA. *See id.* at 17.

Officer Morales admits that he received complaints from individuals while working at the PHA, but he denied recognizing any of the individuals named by plaintiff's attorney. *See id.* at 17–20. He also denied any awareness that any of these individuals had ever complained to the PHA. *Id.* at 18, 20. However, Officer Morales agreed that he had been interviewed by Detective Gwen Thomas regarding complaints lodged against him by "civilians," *see id.* at 21–22, and he particularly remembered the interview addressing a complaint issued by Wayne Christian. *See id.* at 24. Officer Morales stated that he was never disciplined regarding incidents with the individuals named previously by plaintiff's counsel. *See id.* at 26. Officer Morales stated that he was "terminated" in December of, presumably, 1997 but explained that he was still going through the grievance process regarding that action. *See id.* at 25. Officer Morales was also questioned regarding an arrest and charge pertaining to discharge of his service revolver in what, apparently, was a personal dispute, *see id.* at 28, but he would not provide specific answers on this subject because the case is currently pending. *See id.* at 28–29. Officer Morales states that he recalls a complaint regarding an incident in which he shot someone in the back but, again, would provide no details as a civil case may still be pending. *See id.* at 30–31. Officer Morales concedes that he was arrested for assault on a previous occasion while he was a PHA officer. *See id.* at 33–34. The deposition includes no details of any of these incidents.

While one may fairly infer from this deposition that Officer Morales has had problems with the law and that he may have been the subject of complaints while performing his duty as a PHA officer, it is not a fair inference that the PHA failed to train or supervise him. It is also not appropriate to infer that the PHA acted inappropriately in these cases, particularly when Officer Morales' testimony on training—the only evidence presented in the case—states that he was trained according to state procedures prior to working for the PHA. Absent some indication of the basis of the complaints, the PHA's response to them, and the ultimate resolution, even the complaints and arrests to which Officer Morales admits cannot form the basis of a suit demanding municipal liability.

Plaintiff correctly states that "deliberate indifference" is the standard required by *Harris* in suits claiming municipal liability for failure to train employees, *see Harris,* 489 U.S. at 392, 109 S.Ct. 1197, but the allegations in the complaint even combined

---

3. Q. "And Philadelphia Housing accepted that training as a requirement for your employment with Philadelphia Housing?"
A. "Yes."
Q. "Is that normal procedure as far as you know?"·

A. "Yes, they have to. They do not have a choice in that. They have to accept Act 120. That is why it was created, the old Act 120." *Id.* at 15. Counsel has provided no verification or refutation of Officer Morales' claims regarding this matter.

with the deposition testimony of Officer Morales do not rise to the level required to show municipal liability. This instant case may be easily distinguished from cases in which municipal liability was found based on the degree of proof offered. *See, e.g., Beck v. City of Pittsburgh,* 89 F.3d 966, 973–76 (3d Cir. 1996) (reversing a judgment as a matter of law because of evidence showing that the police investigatory unit's structure was designed to curtail disciplinary action and testimony and records showing numerous, similar complaints against officers in the same time period); *cf. Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir.1995) (dismissing § 1983 action against municipality because the bases for liability consistent primarily of "vague assertions about the police department's failure to investigate other wrongdoings" and the incident in the case itself); *Heron v. City of Philadelphia,* 987 F.Supp. 400, 404 (E.D.Pa.1997) (dismissing excessive force claim for failure to show testimony or evidence demonstrating policymaker's awareness of questionable policy). Even taking Officer Morales' deposition in the light most favorable to the plaintiff, the fact that Officer Morales may have been the subject of complaints does not, on its own, raise a genuine issue of material fact. *See, e.g., Petrillo v. City of Philadelphia,* 1997 WL 363844, at *3 (E.D.Pa. June 16, 1997) (holding that deposition testimony revealing complaints against named defendants and citation of civil rights cases against city were insufficient to create municipal liability). Because the plaintiff has not demonstrated any knowledge or awareness of a policymaker sufficient to create a custom but has instead "improperly extrapolate[d] his experience with police officers as an indicia of inadequate ... training," *DiJoseph v. City of Philadelphia,* 947 F.Supp. 834, 843 (E.D.Pa.1996), plaintiff's claims against the PHA will be dismissed with prejudice.

■ With respect to the § 1983 claims against Officer Morales in his official capacity, summary judgment is also appropriate, as the Supreme Court has held that a suit against a municipal officer in his or her official capacity is a suit directed against the municipal entity that officer represents. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). As the *Graham* Court stated, unlike suits against officers in their personal capacities, in which plaintiffs seek to impose personal liability on a government official for actions taken under color of state law, *see id.* at 165, 105 S.Ct. 3099, official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id., citing Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. 2018. As the PHA has received notice and opportunity to respond, *see Graham,* 473 U.S. at 166, 105 S.Ct. 3099, the suit against Morales in his official capacity is, in essence, a suit against the PHA; before Morales may be held liable in this capacity, the PHA itself must be shown to have "played a part in the violation of federal law." *Id.* at 166, 105 S.Ct. 3099 (citations omitted). In short, summary judgment will be granted in favor of the defendants with respect to the suit against Officer Morales in his official capacity for the reasons discussed previously regarding the suit against the PHA itself. *See, e.g., Ruiz v. Philadelphia Housing Authority, et al.,* Civ. A. No. 96–7853, 1998 WL 159038 at *6 (E.D.Pa. Mar.17, 1998).[4]

*Section 1985 Claims*

■ Plaintiff has also raised claims under 42 U.S.C. § 1985. A § 1985(3) claim is limited to private conspiracies based on "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *See Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997), *citing Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). A § 1985(3) conspiracy claim contains four elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive either directly or indirectly, any person or class of person of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the

---

4. As the defendants' motion for summary judgment made no claims or requests regarding the liability of Officer Morales in his individual capacity, this opinion does not address the continued viability of those claims.

deprivation of any right or privilege of a citizen of the United States. *See United Bhd. of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Arnold,* 112 F.3d at 685. Turner has demonstrated no evidence of any kind of conspiracy beyond conclusory allegations in the Complaint itself,[5] nor is there any suggestion that the harm suffered was connected with any racial or other invidious discrimination. In his reply brief, plaintiff argues that the fact that Officer Morales has been subjected to previous complaints and has apparently been sued creates an inference of conspiracy. However, there is no allegation of any agreement nor is there any indication that any hypothetical agreement would have been based on racial or otherwise class-based animus. Consequently, summary judgment on plaintiff's § 1985(3) claim is also appropriate.

### State Law Claims

The court declines to exercise jurisdiction over plaintiff's state law claims against the PHA or against Officer Morales in his official capacity in the absence of any federal issues to be adjudicated. These claims therefore will be dismissed without prejudice for plaintiff to pursue in state court, should he choose to do so.

### Punitive Damages

 Plaintiff's claims for punitive damages against the municipal defendant and Officer Morales in his official capacity are moot because of the grant of summary judgment on these claims. In any event, punitive damages are not available against a municipality or individuals in their official capacity for violations of § 1983. *See Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Agresta v. Goode,* 797 F.Supp. 399, 410 (E.D.Pa.1992).

An appropriate order follows.

---

**5.** Plaintiff does allege that other officers denied him access to counsel, a telephone, and visitors "[d]uring confinement." Compl. ¶ 17. This contention is puzzling as the plaintiff earlier states that he was taken from his home to the officer's car and then thrown from the car beside I-95

### ORDER

**AND NOW,** this 29th day of September, 1998, upon consideration of Defendants' Motion for Summary Judgment, and the response thereto, it is hereby **ORDERED** as follows:

(1) Defendants' Motion is hereby **GRANTED** with respect to all claims against the Philadelphia Housing Authority under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

(2) Defendants' Motion is hereby **GRANTED** with respect to all claims against Officer Ariel Morales in his official capacity under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

(3) Plaintiff's state law claims against both the Philadelphia Housing Authority and Officer Ariel Morales in his official capacity are dismissed without prejudice for Plaintiff to pursue in state court should he choose to do so.

---

without ever being brought into custody. *See id.* ¶¶ 11–15. Even accepting this contradictory aspect of plaintiff's complaint as true, however, such allegations, absent a claim of racial or other class-based animus, do not rise to the level of a § 1985 claim.